UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRIN KEITH NICHOLAS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 11-2630** |
| **SHERIFF MARLIN N. GUSMAN OF THE ORLEANS PARISH** | **SECTION "S"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915(e)(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

### I. Factual Background

The plaintiff, Darrin Keith Nicholas ("Nicholas"), filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Orleans Parish Sheriff Marlin Gusman alleging that he is housed in the Orleans Parish Prison system ("OPP") in unconstitutional conditions.

Nicholas alleges that he is a Louisiana Department of Corrections inmate being housed in OPP. He complains that two of the buildings, the House of Detention ("HOD") and the old parish prison building are filled with airborne diseases such as tuberculosis and "skabees." In HOD, he claims he was housed in one cell for five months where the paint was peeling from the walls and the

toilet constantly leaked onto the floor which caused bacteria to form. He indicates that he and the other inmates had to place towels under the toilet to soak up the water. He alleges that this was reported to the prison officials through the grievance process, but nothing was done.

He also claims that the showers were full of mold and mildew with improperly working drains. He also complains that the food is served to the inmates in front of the shower, and he would have to return to his cell to eat next to the leaking toilet.

He further complains that he was housed with 12 men in a ten-man cell, which caused two other men to sleep on the floor. He alleges that, because of this, he had to climb out of his bed by stepping on the toilet.

Nicholas also alleges that, on June 28, 2011, he made a request through the proper procedures to obtain a library form for the law library. As of August 22, 2011, he had not received it. He also complains that the law library is limited, and it takes too long to obtain access to the books.

He further complains that he had not been provided recreation for two months. His mail also was not issued daily, and his legal mail has been opened. He claims this happened between March 1, 2011 and August 2, 2011.

On August 2, 2011, he was transferred to the old parish prison building where he was housed with violent offenders. He complains that there was no classification in that building and the prisoners are locked in their cells or day room all day. He also complains that there seems to be a shortage of deputies on duty, and it can take 10 to 20 minutes to get a deputy to respond.

He also claims that his cell has wires hanging from the light fixture. He also complains that the inmates eat in the day room where there is a toilet five feet from the table and the shower is in

plain view. He also alleges that the shower is full of rust, mold, and mildew. He further claims that there are wires hanging from a box right next to the shower.

Nicholas also alleges that the building is infested with roaches, mice, spiders, gnats, and flies. He claims that he has to hang his commissary purchases off of the ground so the mice did not get to it. He further alleges that the tier has no drinking water. The inmates are provided with ice in a cooler and must use water from the dirty shower to fill the cooler for drinking water.

As relief, Nicholas requests compensation in the amount of $100 per day for cruel and unusual punishment, pain and suffering, and mental anguish. He also seeks to be moved to a DOC facility with a better environment, and for Sheriff Gusman to address the conditions in OPP.

## II. **Standards of a Frivolousness Review**

Title 28 U.S.C. §§ 1915A and Title 42 U.S.C. §§ 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional

3

allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### III. Analysis

#### A. Claims Against Sheriff Gusman

Nicholas has named Sheriff Gusman as a defendant in his role as supervisory official over OPP. Nicholas claims that he complained about the conditions in HOD through the grievance process, and did not receive relief. He has not, however, alleged that Sheriff Gusman was made personally aware of the conditions at HOD or the old parish prison building about which he complains.

As a supervisory official over the jail, Sheriff Gusman would not be vicariously liable pursuant to § 1983 under any theory of *respondeat superior* simply because an employee or subordinate at the jail allegedly violated the plaintiff's constitutional rights. *See Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *see also Baskin v. Parker*, 602 F.2d 1205, 1220 (5th Cir. 1979). He only would be liable under § 1983 if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120 (5th Cir. 1980). Nicholas does not allege that Sheriff Gusman was aware of the living conditions or his attempts to access law

library materials. He also does not indicate that he in anyway notified the Sheriff personally about these complaints.

Nicholas has not demonstrated a personal connection that would render Sheriff Gusman liable under § 1983. His claims against Sheriff Gusman are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

**B.  General Prison Conditions**

Even if Nicholas could point to a liable party, his claims do not amount to constitutional violations. "Prison conditions constitute cruel and unusual punishment if they involve the 'wanton and unnecessary infliction of pain [or if they are] grossly disproportionate to the severity of the crime warranting imprisonment.'" *Hamilton v. Lyons*, 74 F.3d 99, 103-04 (5th Cir. 1996) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)); citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Hutto v. Finney*, 437 U.S. 678, 687 (1978)). Like other Eighth Amendment claims, a conditions of confinement claim must satisfy tests for both objective and subjective components. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998) (citing *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *accord Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Downey v. Denton County*, 119 F.3d 381, 385-86 (5th Cir. 1997). To succeed on a claim of unconstitutional conditions of confinement, this Court "must ask if 'the officials act[ed] with a sufficiently culpable state of mind' and if the alleged wrongdoing was objectively 'harmful enough' to establish a Constitutional violation." *Hudson*, 503 U.S. at 8 (quoting *Wilson*, 501 U.S. at 298, 303). If the Court finds that either the subjective or objective component of the test is not met, it need not address the other component. *Davis*, 157 F.3d at 1006.

With respect to the objective component, the Supreme Court in *Wilson* noted that routine discomfort is part of the penalty that convicted prisoners pay for having committed crimes.

5

Therefore, "only those deprivations denying 'the minimal civilized measure of life's necessities' are sufficiently grave to form the basis of an Eighth Amendment violation." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347). "[E]xtreme deprivations are required to make out a conditions-of-confinement claim." *Hudson*, 503 U.S. at 9.

With respect to the subjective component of the test, the Supreme Court has applied a deliberate indifference standard. *Wilson*, 501 U.S. at 303. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

> To establish deliberate indifference in the context of the Eighth Amendment, the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed.

*Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk." *Id.* (citing *Farmer*, 511 U.S. at 842 n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) ( citations omitted) (emphasis added).

Nicholas complains that the living conditions of the facility were substandard, because the showers had mold, the toilet leaked in one of his cells, and wires hung down from the lights. He also complains of insects and a fear of mice in the building. The conditions described by the plaintiff,

6

while plainly not comfortable or pleasant, do not rise to a level of seriousness constituting a constitutional violation.

Nicholas alleges no harm or risk of serious harm in the constitutional sense, and the court can perceive none under the circumstances described in the plaintiff's claims. Short term sanitation problems, although admittedly unpleasant, do not amount to constitutional violations. *Whitnack v. Douglas County*, 16 F.3d 954, 958 (8th Cir. 1994); *Knop v. Johnson*, 977 F.2d 996, 1013 (6th Cir. 1992); *Robinson v. Ill. State Corr. Ctr.*, 890 F. Supp. 715, 720 (N.D. Ill. 1995). "[J]ails must provide only reasonably adequate hygiene and sanitation conditions." *Burton v. Cameron County*, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing *Green v. Ferrell*, 801 F.2d 765, 771 (5th Cir.1986)); *accord Benshoof v. Layton*, No. 09-6044, 2009 WL 3438004, at *4 (10th Cir. Oct. 27, 2009); *Gates v. Cook*, 376 F.3d 323, 342 (5th Cir. 2004). None of Nicholas's allegations about the conditions at OPP establish constitutional violations. *See Davis*, 157 F.3d at 1006 (no constitutional injury when plaintiff was confined in "filthy" cell for three days) (citing *Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no Eighth Amendment violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell)); *Causey v. Allison*, No. 08CV155-RHW, 2008 WL 4191746, at *1 (S.D. Miss. Sept. 9, 2008) (no Eighth Amendment violation where prisoner claimed black mold was growing in the shower but "admits that he has had no medical problems resulting from the black mold"); *McIntyre v. Phillips*, No. 07-527, 2007 WL 2986470, at *2-4 (W.D. Mich. Sept. 10, 2007); *Eady v. Head*, No. CIVASA04CA0648 NN, 2006 WL 2663776, at *3 (W.D. Tex. Sept. 15, 2006) ("Going without a shower and being exposed to the foul smell of a backed-up shower for two days on two separate occasions does not show deliberate indifference to Plaintiff's

basic human needs or constitute cruel and unusual punishment in violation of the Eighth Amendment.").

Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir.1982). Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008). Nicholas does not allege that he has suffered any injury or ailment, other than inconvenience, as a result of the conditions of his cells at OPP.

For the foregoing reasons, Nicholas's complaints about the conditions of his confinement fall short of stating a constitutional violation, and the claims must be dismissed as frivolous pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### C. Classification in OPP

Nicholas also complains that, when he was moved from HOD into the old parish prison building, there was no classification conducted to keep him away from inmates convicted of violent crimes. Nicholas, however, has no constitutional right to a particular status or classification within the prison. The law is well settled that inmates have no protected property or liberty interest in their custodial classification or placement in the jail. *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir. 1998); *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992); *Moody v. Baker*, 857 F.2d 256, 257-58 (5th Cir. 1988). The placement and classification of prisoners is a matter left to the discretion of prison officials. *McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir. 1990).

For these reasons, Nicholas's claims regarding classification of inmates at OPP must be dismissed as frivolous pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### D.     Access to Law Library Materials

Nicholas alleges that he made a request for a law library form which he did not timely receive. He also complains that the law library collection at OPP was too small and access was too slow. His claim is frivolous and otherwise fails to state a claim for which relief can be granted.

Prisoners have a First Amendment right of meaningful access to the courts through adequate law libraries or assistance from legally trained personnel. *Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Dickinson v. TX, Fort Bend County*, 325 Fed. Appx. 389, 390 (5th Cir. 2009); *Sandoval v. Johns*, 264 F.3d 1142, No. 00-41276, 2001 WL 822779, at *1 (5th Cir. June 29, 2001) (Table, Text in Westlaw); *McDonald v. Steward*, 132 F.3d 225, 230 (5th Cir. 1998); *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996). However, "[w]hile the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Vaccaro v. United States*, 125 F.3d 852, No. 96-60838, 1997 WL 574977, at *1 (5th Cir. Aug. 28, 1997) (quoting *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir. 1993)) (Table, Text in Westlaw); *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996).

To state a claim that his constitutional right of access to the courts was violated, Nicholas must demonstrate that his position as a litigant was actually prejudiced. *Lewis v. Casey*, 518 U.S. 343, 356 (1996); *Cochran v. Baldwin*, No. 05-20100, 2006 WL 2418945, at *1 (5th Cir. Aug. 18, 2006); *Smith v. Polunsky*, 233 F.3d 575, No. 00-40362, 2000 WL 1468717, at *1 (5th Cir. Sep. 5, 2000) (Table, Text in Westlaw); *Eason*, 73 F .3d at 1328. The inmate must "demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Lewis*, 518 U.S. at 351.

Nicholas does not allege the essential elements of a First Amendment claim detailed above, in his complaint. He does not allege that he was hindered in any particular civil or criminal proceedings because of the law library at OPP. He has not alleged or demonstrated any actual legal prejudice of the type required by *Lewis* that was caused by any action or omission at the jail. "[C]ausation is an element of a section 1983 claim; [defendants'] actions must have actually caused the deprivation . . . of which [plaintiff] complains." *Hart v. O'Brien*, 127 F.3d 424, 446 (5th Cir.1997), *abrogated in part on other grounds as recognized in Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999); *accord Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000). In *Lewis*, the Supreme Court made clear that an inmate must establish actual injury to state a claim for denial of his right of access to the courts. Nicholas has made no such allegation here.

For all of the forgoing reasons, Nicholas's claim concerning inadequate access to the law library at the jail is legally frivolous and fails to state a § 1983 claim upon which relief can be granted pursuant to § 1915(e), § 1915A, and § 1997e.

### E. <u>Recreation Opportunity</u>

Nicholas also alleges that for two months he was not provided with adequate and consistent opportunities for recreation. This complaint also is frivolous and fails to state a claim.

Inmates have no protected liberty interest in specific recreational opportunities and the "[d]eprivation of exercise is not a per se constitutional violation." *Lewis v. Smith*, 277 F.3d 1373, No. 00-31371, 2001 WL 1485821, at *1 (5th Cir. Nov. 13, 2001) (Table, Text in Westlaw) (citing *Stewart v. Winter*, 669 F.2d 328, 336 n.19 (5th Cir. 1982); *Miller v. Carson*, 563 F.2d 741, 751 n.12 (5th Cir.1977)); *accord Sampson v. Corr. Corp.*, No. 08-CV-0915, 2009 WL 837640, at *16 (W.D. La. Mar. 26, 2009) (citing *Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991); *Beck v. Lynaugh*, 842

F.2d 757, 762 (5th Cir. 1988); *Lato v. Attorney Gen.*, 773 F. Supp. 973, 978 (W.D. Tex. 1991)). "[W]hat is constitutionally required, however, is that [the prisoner] not be confined for long periods without the opportunity for regular physical exercise." *Lewis*, 2001 WL 1485821, at *1 (citing *Ruiz v. Estelle*, 679 F.2d 1115, 1152 (5th Cir. 1982), *amended in part*, *vacated in part on other grounds*, 688 F.2d 266 (5th Cir. 1982)).

Thus, to succeed on a claim under § 1983 for lack of exercise, a prisoner must set forth facts sufficient to "support the existence of any health hazard under the specific circumstances involved." *Ruiz*, 679 F .2d at 1152; *accord Delaney v. DeTella*, 256 F.3d 679, 684 (7th Cir. 2001); *Ordaz v. Lynaugh*, 20 F.3d 1171, No. 93-4290, 1994 WL 144882, at *4 (5th Cir. Apr. 15, 1994) (Table, Text in Westlaw); *Green*, 801 F.2d at 771. The plaintiff must also allege an actual injury caused by defendants' acts. *See Brock v. Sparkman*, 101 Fed. Appx. 430, 431 (5th Cir. 2004) (citing *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 307 (1986)) (prisoner who had bumps and bruises from repeatedly hitting his head on bunk bed had no cognizable injury); *Jackson v. Culbertson*, 984 F.2d 699, 700 (5th Cir. 1993) (excessive force claim dismissed as frivolous when prisoner suffered no injury); *Oliver v. Collins*, 904 F.2d 278, 281 (5th Cir. 1990) (claims properly dismissed when plaintiff alleged insufficient causal connection between defendants' conduct and the claimed assault, and when plaintiff did not allege constitutional harm); *Auster Oil & Gas, Inc. v. Stream*, 835 F.2d 597, 602 (5th Cir. 1988) (citing *Stachura*, 477 U.S. at 307) (§ 1983 is designed to compensate persons for actual injuries caused by deprivation of constitutional rights); *Jefferson v. City of Hazelhurst*, 936 F. Supp. 382, 386 (S.D. Miss. 1995) (To state a claim under § 1983, plaintiff must plead "a direct causal connection . . . without intervening factors, between the deprivation and some injury to plaintiff."). Nicholas has not alleged any such injury or health issues.

Nicholas fails to allege or establish any constitutional violation arising from his recreational opportunities at OPP. He identified no particular injuries suffered as a result of lack of recreation. Nicholas has not shown that he was deprived of recreation for any significant time period or that he suffered any physical injury or violation of his constitutional rights of any kind as a result of the alleged limitations on exercise at OPP. *See Hernandez*, 522 F.3d at 560 (inmate who alleged that he was deprived of outdoor and out-of-cell exercise for thirteen months while in lockdown and that he suffered muscle atrophy, stiffness, loss of range of motion, and depression failed to show either that he was placed at substantial risk of serious harm or that he suffered a serious illness or injury sufficient to constitute an Eighth Amendment violation.); *Ordaz*, 1994 WL 144882, at *4 (Plaintiff failed to state a constitutional violation resulting from denial of recreation when he failed to allege health impairment or physical injury.)

Nicholas fails to state a cognizable § 1983 claim. This claim must also be dismissed as frivolous and/or for failure to state a claim pursuant to § 1915, § 1915(e), § 1915A, and § 1997e.

### F. Request for Transfer

As part of his requested relief, Nicholas also seeks a transfer from OPP to a DOC facility. His request for transfer is frivolous for the following reasons.

It is well settled that the due process clause does not, by itself, give a prisoner a protected liberty interest in the location of his confinement even if the environment of one prison may be "much more disagreeable" to the prisoner than in another. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Further, a prisoner has no liberty interest in being housed in any particular facility where the state statute vests discretion to the state officials to carry out their official function. *See Olim*

*v. Wakinekona*, 461 U.S. 238, 244-45 (1983); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir.1996); *see also Yates v. Stalder*, 217 F.3d 332 (5th Cir. 2000).

Louisiana Revised Statute § 15:824, authorizes the Director of Corrections to decide to which penal institution an inmate should be delivered or transferred.[1] The Director of Corrections has broad discretion regarding the placement and transfer of state prisoners. *See Santos v. La. Dept. of Corr. Secretary*, 1996 WL 89260, at *4 (E.D. La. Feb. 28, 1996) (noting that La. Rev. Stat. Ann. § 15:824(A), (B) does not give DOC prisoners a constitutionally protected right to be housed in a particular facility); *see also* La. Rev. Stat. Ann. § 15:566(B); *State v. Sylvester*, 648 So.2d 31, 33 (La. App. 4th Cir. 1994).

Thus, the State of Louisiana by its broad discretionary statutes has not created a protected liberty interest in being housed in a particular prison or being transferred from one prison to another.

---

[1] La. Rev. Stat. Ann. §15:824(A) and (B) provide in pertinent part:

A. Notwithstanding any provision of law to the contrary, any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Louisiana Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department. The director of corrections shall assign each newly committed inmate to an appropriate penal or correctional facility. The director may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training and security needs established by the department; however, no juvenile may be transferred to a penal or correctional facility for persons committed by a court having criminal jurisdiction except in accordance with the provisions of R.S. § 15:1062.

B. (1)(a) In the event any individual has been committed to the department for confinement which is or has been delayed or prevented after final sentence by court order restricting the department from institutionalizing the individual, or when the individual is not institutionalized in a state penal or corrections institution because of lack of facilities under the control of the department, or the department otherwise refused to accept the individual for confinement, which resulted or has resulted in the individual being confined in a parish jail or institution after final sentence, or when he is being held in the parish jail without bail, pending an appeal, the department shall pay to each parish sheriff, or to the governing authority of those parishes in which the governing authority operates the parish jail, for keeping and feeding the individual in the parish jail the sum of twenty-one dollars per day from date of sentencing until the individual is confined in a penal or correctional institution under the supervision of the department. . . .

*Santos*, 1996 WL 89260 at *4. Therefore, Nicholas has no constitutional right to a transfer, and his request for transfer is also frivolous.

## IV. Recommendation

It is therefore **RECOMMENDED** that Nicholas's § 1983 complaint against Sheriff Gusman be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. §§ 1915(e), 1915A and 42 U.S.C. §1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[2]

New Orleans, Louisiana, this 14th day of December, 2011.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[2] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.